# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **LINDA L. LEJEUNE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:17-CV-01908-NCC** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Deputy Commissioner of Operations,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Linda L. LeJeune ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 18) and Defendant has filed a brief in support of the Answer (Doc. 23). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI on February 18, 2014 (Tr. 171-76). Plaintiff was initially denied on May 16, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 117-23, 125). After a hearing, by decision dated April 28, 2016, the ALJ found Plaintiff not disabled (Tr. 22-45). On June 19, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ found Plaintiff has not engaged in substantial gainful activity since February 18, 2014, the application date (Tr. 27).  The ALJ further found Plaintiff has the severe impairments of degenerative disc disease, fibromyalgia, chronic pain syndrome, hypermobility syndrome, degenerative joint disease of the right hip, chronic obstructive pulmonary disease, moderately restrictive lung disease, depression, and anxiety but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 27-28).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a limited range of light work[1] with the following limitations (Tr. 30).  She is capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday (*Id.*).  Plaintiff is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds (*Id.*).  She is limited to no overhead reaching with the bilateral upper extremities (*Id.*).  She must avoid all exposure to dangerous unprotected heights and dangerous unprotected moving machinery (*Id.*).  Plaintiff must avoid concentrated exposure to pulmonary irritants, defined for this purpose as she needs a work environment with no exposure to, e.g., airborne particulates from grinding or sanding processes (Tr. 30-31).  She is limited to performing simple, routine tasks that can be

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

performed independently (Tr. 31). Beyond that, any interaction with co-workers and supervisors must be occasional at maximum, with no direct interaction with the general public (*Id.*). Any changes in work duties and setting must be the same changes daily (*Id.*).

The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including mail clerk, small product assembler, and sub-assembler of electric equipment (Tr. 39-40). Thus, the ALJ concluded that Plaintiff is not disabled (Tr. 40). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision (Doc. 18).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

# IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ failed to properly consider the effects of physical pain on the RFC (Doc. 18 at 3). Second, Plaintiff argues that the ALJ failed to properly consider the effects of mental pain on Plaintiff's RFC (*Id.* at 11). Third, Plaintiff asserts that the ALJ erred in not finding Plaintiff's insomnia to be a severe impairment at step 2 (*Id.* at 12-13). For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A. Severe Impairment: Insomnia

The Court will first address Plaintiff's assertion that the ALJ erred in not finding Plaintiff's insomnia to be a severe impairment at step 2 (Doc. 18 at 12-13). At Step 2, the Commissioner must determine whether a claimant has a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921. While a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b).

The Court finds that the ALJ did not err such that remand is warranted because the ALJ considered Plaintiff's insomnia when determining Plaintiff's RFC. The ALJ determined that insomnia was not a severe impairment because, "[t]here is no evidence [her] insomnia cannot be

adequately controlled with medication" (Tr. 27). The ALJ found that Plaintiff had some severe physical and mental impairments and then proceeded to consider the limiting effect of all of Plaintiff's impairments, including her non-severe impairments, in determining Plaintiff's RFC. 20 C.F.R. § 416.945(a)(2). Regarding her insomnia, the ALJ noted that Plaintiff testified that she slept only four hours per night (Tr. 31) and indicated the various medications Plaintiff was prescribed to address her sleep difficulties (Tr. 34, 36-37). Therefore, even if the ALJ erred by not finding insomnia to be a severe impairment, such error was harmless in light of the ALJ's consideration of Plaintiff's insomnia in his RFC analysis. *See Cody v. Berryhill*, No. 4:17-CV-378-SPM, 2018 WL 1295627, at *4 (E.D. Mo. Mar. 13, 2018) (finding the ALJ properly addressed plaintiff's insomnia when he found the impairment not severe but discussed her sleep problems at several points in his decision); *Givans v. Astrue*, No. 4:10CV417 CDP, 2012 WL 1060123, at *18 (E.D. Mo. Mar. 29, 2012). *See also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (noting that an error is harmless unless the ALJ would have decided the case differently). In conclusion, the Court finds the ALJ's determination at step 2 regarding Plaintiff's severe impairments to be based on substantial evidence and consistent with Regulations and case law.

**B. Credibility**

The Court will next consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 416.945 (2010). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3)

the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ reviewed the objective medical evidence of record and determined that it failed to support the severity of Plaintiff's alleged symptoms (Tr. 32-38). Specifically, the ALJ found that while Plaintiff alleged significant symptoms and limitations due to pain, "the clinical and objective findings in the record are inconsistent with the degree of symptoms and limitations alleged. The degree of [Plaintiff's] reported symptoms exceeds the documented clinical signs, objective findings, and laboratory diagnostic testing contained in the record" (Tr. 32). Contrary to Plaintiff's assertion, the ALJ considered Plaintiff's subjective complaints of pain and found them not credible. An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). In his analysis of Plaintiff's credibility, the ALJ specifically referred to several objective measures during the relevant period to explain why Plaintiff's physical condition was

not disabling. His detailed review, encompassing nearly three full pages regarding her physical impairments alone, included findings of relatively normal clinical signs and diagnostic testing. For example, as the ALJ noted, an MRI scan of the lumbar spine in January 2013 showed only mild disc bulges and only mild neural foraminal stenosis (Tr. 33, 445-46). More recent MRIs, in July and October of 2015, indicated lower lumbar facet hypertrophy, mild degenerative changes, and minimal stenosis (Tr. 34-35, 513-14, 580-81). Lumbar spine x-rays from October 2015 similarly show only mild degenerative disc disease (Tr. 34, 577). X-rays of Plaintiff's hip in November 2013 only showed minimal degenerative arthritis of the right hip (Tr. 33, 340). The ALJ continued his analysis by detailing the relatively normal clinical findings throughout the record including findings of normal gait and range of motion (ROM), normal flexibility, and no kyphosis or scoliosis (Tr. 33, 472-74). *See also* Tr. 285 (cervical spine rotation was not diminished); Tr. 292 (normal gait and stance); Tr. 335 (normal range of motion); Tr. 482-83 (normal tone and motor strength, normal movement of all extremities, and full ROM).

The ALJ also reviewed the objective evidence as it related to Plaintiff's respiratory impairments, finding "her respiratory impairments were stable on prescribed inhalers without the need for emergency physician intervention for respiratory distress" (Tr. 35-36). The Court will not detail the ALJ's review as Plaintiff does not raise any issues regarding the ALJ's analysis in this regard. Regardless, the Court finds that the ALJ properly considered the objective evidence in this area and, in light of his findings, explicitly included respiratory limitations in his RFC determination (Tr. 36).

Additionally, the ALJ reviewed objective evidence as it related to Plaintiff's mental health impairments (Tr. 36-37). Specifically, the ALJ found that, "the condition of the [Plaintiff's] mental status has not deteriorated to such an extent that she has needed inpatient

psychiatric hospitalization during the period adjudicated. Mental status examinations show the [Plaintiff] to be fully oriented with intact memory, concentration, reasoning skills, judgment and insight. Additionally, the [Plaintiff's] mental impairments of depression and anxiety appear to be controlled with compliance on psychotropic medications" (Tr. 36). Indeed, as noted by the ALJ, mental status exams from February 2013 to December 2014 showed Plaintiff was fully oriented, with goal directed, linear, and coherent thought processes, euthymic[2] mood and affect, and fair insight and judgment (Tr. 36, 348-60, 500-10). After an apparent gap in treatment, Plaintiff established care with Dr. Georgia Jones, M.D. in April 2015 (Tr. 36, 614). As indicated by the ALJ, Dr. Jones diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder and prescribed psychotropic medication to Plaintiff (Tr. 37, 614-15). At subsequent visits, Dr. Jones noted that the psychotropic medication "has made a big difference" in treating Plaintiff's depression and anxiety and that Plaintiff continued to improve as she was fully oriented with logical and coherent thought processes, reported a stable mood, and displayed an increased ability to concentrate and make decisions (Tr. 37, 619, 629-30).

Second, the ALJ found that Plaintiff's treatment for pain was relatively conservative in nature (Tr. 35). Specifically, the ALJ stated, "[a]lthough the [Plaintiff] has sought a fair amount of medical treatment for her complaints of pain, what is significant about the evidence in this case is how little, in terms of treatment modalities, has been offered" (*Id.*). For example, as noted by the ALJ, "[n]o neurosurgery has been offered" and "[o]ther treatment modalities such as nerve root blocks, nerve root ablations, a TENS unit, and a spinal cord stimulator, for example, were not offered" (Tr. 35). *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of

---

[2] Euthymia is defined as "joyfulness; mental peace and tranquility" and "moderation of mood, not manic or depressed." Stedmans Medical Dictionary, 307600 (2014).

hospitalizations . . . limited treatment of symptoms, [and] failure to diligently seek medical care"); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (finding that conservative treatment reduced the claimant's credibility). Although Plaintiff argues that the ALJ improperly dismissed Plaintiff's pain medication when the ALJ described Tramadol as, "[not] commonly known to be a particularly strong narcotic such as morphine, Dilaudid, or Fentanyl" (Doc. 18 at 5 (citing Tr. 34)), the ALJ may properly consider the strength of a claimant's medication in his credibility determination. *Haynes v. Shalala*, 26 F.3d 812, 814-15 (8th Cir. 1994) ("A lack of strong pain medication is inconsistent with subjective complaints of disabling pain.").

Third, to that end, the ALJ noted that treatment effectively addressed Plaintiff's conditions (Tr. 33-37). Specifically, the ALJ indicated that pain medication and injections helped control her neck, back, and shoulder pain and that she was doing "fairly well" on her medication addressing her chronic pain syndrome and fibromyalgia (Tr. 33, 372, 378, 381, 489). Indeed, for example, Plaintiff reported to pain management providers that "all medicines are helping and pain is tolerable," that her overall functioning was a "little better," and her physical functioning was "better" (Tr. 375). *See also* Tr. 378 ("The patient had greater than 85% relief of pain after the previous injection"). Similarly, the ALJ found Plaintiff's mental health impairments to be adequately controlled with medication, noting the Plaintiff told her psychiatrist as recently as June and September 2015 that her medication "made a big difference" and that the stability of her condition made her "able to enjoy things" (Tr. 37, 619, 628). *See also* Tr. 619 (noting that Plaintiff's irritability, anxiety, guilt [sic] feelings, and energy are all better and further stating "[r]esponse to tx is good"). *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009); *Medhaug v. Astrue*, 578 F.3d 805, 813

(8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Fourth, the ALJ noted that Plaintiff did not always comply with suggested treatment (Tr. 34, 36). Specifically, the ALJ indicated that Plaintiff reported to emergency room providers that she had been out of her pain medication for a week (Tr. 34, 524). *See also* Tr. 643 ("[S]he ran out of pain meds so last week was hard, eventually went to the ER, got meds."). It is clear that "[a] failure to follow [a] recommended course of treatment [ ] weighs against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (citing *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001)). *See also Wildman v. Astrue*, 596 F.3d 959, 968-69 (8th Cir. 2010) (it is permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment).

Fifth, the ALJ found that Plaintiff's "work record does not suggest an individual highly motivated to work prior to the alleged onset date of disability, and does not support an inference that the [Plaintiff] would still be working but for certain identified medical impairments" (Tr. 32). Specifically, the ALJ noted that Plaintiff did not have an injury, medical change, or medical event on or about the alleged onset of disability (*Id.* (citing Tr. 183)). Indeed, upon review of Plaintiff's earnings report, Plaintiff did not work from 2005 to 2009, 2013 and 2014 with very limited earnings in 2012 and Plaintiff reported that she stopped working in December of 2011 (Tr. 183, 191). *Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) (sporadic work history may properly be consider in ALJ's credibility assessment). "A lack of work history may indicate a lack of motivation to work rather than a lack of ability." *Pearsall*, 274 F.3d at 1218 (citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993)).

Sixth, the ALJ found "the degree of [Plaintiff's] reported symptoms exceeds the documented clinical signs, objective findings, and laboratory diagnostic testing contained in the record" and referenced a treatment note indicating that Plaintiff has a "very, very low pain threshold" and that "her symptoms far exceed her signs on exam" (Tr. 32, 473). Although Plaintiff argues that the ALJ failed to properly contemplate the significance of a "very, very low pain threshold" on Plaintiff's credibility (Doc. 18 at 4), an ALJ may properly consider the exaggeration of symptoms in his credibility analysis. *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014). To the extent Plaintiff asserts that the ALJ failed to properly consider the effects of mental pain on her RFC (Doc. 18 at 11), as addressed herein, "[s]ubjective allegations of pain may be discounted by the ALJ if the evidence as a whole is inconsistent with the claimant's testimony." *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015).

Seventh, the ALJ considered Plaintiff's activities of daily living finding her level of activity inconsistent with the record. Specifically, the ALJ found Plaintiff to have "mild restriction due to mental impairments" and noted that what limitations alleged appeared to be based primarily upon complaints of physical pain and limitation (Tr. 29). However, when specifically addressing Plaintiff's activities of daily living as they relate to her physical impairments, the ALJ found that the record does not support that her "few daily activities" are due to her medical condition (Tr. 32). Although Plaintiff generally asserts that there is no evidence to undermine Plaintiff's description of her limited daily activities and that her testimony was consistent with the symptoms and description of activities she reported to various doctors (Doc. 18 at 9), in addition to the detailed analysis of Plaintiff's credibility generally, as addressed above, the ALJ indicated that "[n]o treating or examining physician has placed any specific long-term limitations on the [Plaintiff's] ability to stand, sit, walk, lift, carry, or do other

basic exertional activities" (Tr. 32). Indeed, upon review of the record, although Plaintiff

reported not engaging in physical activities due to chronic body pain (Tr. 662), she was

counseled to exercise (Tr. 300-02, 474, 648). *Pelkey v. Barnhart,* 433 F.3d 575, 579 (8th Cir.

2006) (affirming ALJ's credibility determination based in part on claimant's doctors having

recommended exercise and medication but never surgery). Regardless, even if the Court were to

fully credit Plaintiff's self-reported daily activities, Plaintiff's daily activities and their apparent

inconsistency with the medical evidence was only one of many factors considered by the ALJ

when determining Plaintiff's credibility.

    In conclusion, the Court finds the ALJ's credibility determination is based on substantial

evidence and is consistent with Regulations and case law.

## C. RFC

    The Regulations define RFC as "what [the claimant] can do" despite his "physical or

mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can

engage in substantial employment, an ALJ must consider the combination of the claimant's

mental and physical impairments." *Lauer*, 245 F.3d at 703. "The ALJ must assess a claimant's

RFC based on all relevant, credible evidence in the record, 'including the medical records,

observations of treating physicians and others, and an individual's own description of [her]

limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228

F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

    To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the

true extent of the claimant's impairments to determining the kind of work the claimant can still

do despite his impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although

it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to

establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).  The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence ... must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]"  245 F.3d at 704 (*quoting Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)).  Thus, an ALJ is "required to consider at least some supporting evidence from a professional."  *Id.  See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found that Plaintiff has the RFC to perform light work with the following limitations (Tr. 30).  She is capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday (*Id.*).  Plaintiff is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds (*Id.*).  She is limited to no overhead reaching with the bilateral upper extremities (*Id.*).  She must avoid all exposure to dangerous unprotected heights and dangerous unprotected moving machinery (*Id.*).  Plaintiff must avoid concentrated exposure to pulmonary irritants, defined for this purpose as she needs a work environment with no exposure to, e.g., airborne particulates from grinding or sanding processes (Tr. 30-31).  She is limited to performing simple, routine tasks that can be performed independently (Tr. 31).  Beyond that, any interaction with co-workers and supervisors must be occasional at maximum, with no direct

interaction with the general public (*Id.*). Any changes in work duties and setting must be the same changes daily (*Id.*).

The Court finds that the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly addressed Plaintiff's credibility and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record, her subjective allegations of pain, activities of daily living, and her work record. The ALJ additionally addressed the medical opinion evidence or record.

First, the ALJ considered the opinion of Dr. Georgia Jones, M.D. ("Dr. Jones"), Plaintiff's treating psychiatrist, affording her opinion "great weight" (Tr. 38). Dr. Jones completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on December 21, 2015 (Tr. 582-84). Dr. Jones found Plaintiff's ability to understand, remember, and carry out instructions to be affected by her impairments (Tr. 582) and opined that Plaintiff is moderately limited[3] in her ability to understand and remember complex instructions and the ability to make judgments on complex work-related decisions and markedly limited[4] in her ability to carry out complex instructions (Tr. 582-83). Dr. Jones further opined that Plaintiff is moderately limited in her ability to interact appropriately with supervision, co-workers, and the public, as well as her ability to respond to changes in the routine work setting (Tr. 583). The ALJ explicitly included these limitations in his RFC determination, stating, "[t]his is obviously accommodated in the residual functional capacity" (Tr. 38). In doing so, the ALJ found the opinions of Dr. Jones to be consistent with her psychiatric treatment records that document

_____

[3] Moderate limitation is defined on the form as "more than a slight limitation in this area, but the individual is still able to function satisfactorily" (Tr. 582).

[4] Marked limitation is defined on the form as "serious limitation in this area. There is a substantial loss in the ability to effectively function" (Tr. 582).

notable improvement to Plaintiff's depression and anxiety with medication management and normal mental status exams overall (Tr. 39).

Next, the ALJ reviewed the opinion of Steven Adams, Psy.D. ("Dr. Adams"), a clinical psychologist and consultative examiner for the Missouri Department of Social Security, affording his opinion "no weight" (Tr. 38). On December 3, 2015, Dr. Adams completed a psychological evaluation of Plaintiff for the purposes of determining Plaintiff's Medicaid eligibility (Tr. 661-64). Dr. Adams diagnosed Plaintiff with major depressive disorder, recurrent, moderate; and generalized anxiety disorder (Tr. 664). Dr. Adams opined that Plaintiff is unable to understand and remember simple instructions, does not seem able to sustain her concentration and persistence on simple tasks, and does not seem able to adapt to a typical work environment (*Id.*). The ALJ found Dr. Adams' opinion to be inconsistent with Plaintiff's mental health treatment records indicating that Plaintiff's mental health impairments were largely stable with treatment compliance, as addressed in more detail above (Tr. 38). *See Hilderbrand v. Berryhill*, No. 4:16-CV-405 (CEJ), 2017 WL 2618269, at *23 (E.D. Mo. June 16, 2017) (finding the ALJ's decision supported by substantial evidence when the ALJ gave the medical opinion of a consultative examiner "minimal weight" relying, in part, on its inconsistency with the record as whole including records that indicated that despite plaintiff's diagnosis, she had normal mental status findings). The ALJ also considered the context of Plaintiff's interaction with Dr. Adams—she saw him once for the purpose of establishing Medicaid eligibility (*Id.*). Indeed, "length of treatment relationship [is] one factor to consider when weighing doctor's opinion." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). Regardless, although the ALJ assigned the opinion "no weight," he explicitly included several of the limitations in his RFC

determination including no more than occasional interaction with co-workers and supervisors, and no direct interaction with the general public (Tr. 38).

The ALJ also considered the opinion of Joan Singer, Ph.D. ("Dr. Singer"), a non-examining state agency psychologist, affording her opinion "considerable weight" (Tr. 39). Dr. Singer completed a mental residual functional capacity assessment on May 16, 2014 (Tr. 109-10). Dr. Singer found Plaintiff to be moderately limited in her ability to carry out detailed instructions and the ability to maintain attention and concentration for extended period but, otherwise, not significantly limited (Tr. 109-10). Dr. Singer concluded that "[e]vidence indicates the [Plaintiff] has the ability to perform at least simple repetitive tasks" (Tr. 110). The ALJ found Dr. Singer's opinion to be consistent with the objective medical evidence of record (Tr. 39). *Krogmeier*, 294 F.3d at 1023. *See also* 20 C.F.R. § 416.927 ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion").

Therefore, the Court finds that the ALJ properly considered the opinion evidence of record in formulating his RFC. To the extent that Plaintiff also argues that the ALJ failed to consider or seek any medical opinion regarding Plaintiff's physical RFC (Doc. 18 at 9), the Court finds this assertion unavailing as "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The ALJ also properly considered Plaintiff's need to use an assistive device. The ALJ acknowledged that Plaintiff testified that she uses an assistive device—mentioning both a cane and a walker—but found that no medical source had prescribed Plaintiff an assistive device (Tr. 32, 35, 63-64). Plaintiff does not contest that a doctor never prescribed a cane[5] to Plaintiff, but, she instead asserts that her doctors knew she was using a cane, had been using a cane for an

---

[5] Plaintiff does not raise any issues regarding Plaintiff's use of a walker. Therefore, the Court will only address Plaintiff's use of a cane.

extended period of time, and were "okay with that" (Doc. 18 at 8 (citing Tr. 64)). Indeed, the medical record is replete with notes regarding Plaintiff's use of a cane (*See, e.g.,* Tr. 284, 287, 449). However, self-reports, even those made to physicians, are not sufficient to support the necessity of an assistive device. *See Johnson v. Astrue*, 816 F. Supp. 2d 752, 773 (W.D. Mo. 2011) (finding plaintiff's contention that his physician ordered him to use a cane as an assistive device not supported by the record when the record only reflected that plaintiff reported to a medical provider that another provider told plaintiff he needed to use a cane); *Hillstrom v. Comm'r of Soc. Sec.*, No. 3:15-CV-40, 2016 WL 7507789, at *5 (D.N.D. May 24, 2016) (plaintiff's self-reports did not establish that she "required the use of any hand-held assistive devices during the relevant time period").

Next, although Plaintiff asserts that the ALJ improperly discounted Plaintiff's need for home healthcare services, the ALJ properly considered Plaintiff's use of home healthcare services in his RFC determination (Doc. 18 at 10). Plaintiff testified that she had been receiving home healthcare services for approximately two years (Tr. 57). Plaintiff's home healthcare was apparently being provided by another agency (*See.* Doc. 18 at 10). "Because a disability determination by another government agency is based on the government agency's own rules and not on social security law, it is not binding on the Commissioner." *Dean v. Berryhill*, No. 1:16-CV-57-SPM, 2017 WL 2277188, at *8 (E.D. Mo. May 25, 2017) (citing 20 C.F.R. §§ 404.1504, 416.904). Here, the ALJ did not ignore the findings regarding Plaintiff's eligibility for home health services. The ALJ, however, determined that there was no evidence that Plaintiff's eligibility was based on "physical examinations and concrete medical evidence, rather than [Plaintiff's] subjective statements of limitation to an evaluator" (Tr. 32). *See Buckner v. Astrue*, 646 F.3d 549, 559 n.8 (8th Cir. 2011) ("The ALJ also did not err by failing to address the fact

that Buckner may have received Medicaid benefits at one time because this evidence, standing alone, does not indicate whether another agency found Buckner disabled.").  Regardless, as addressed in more detail throughout this opinion, the ALJ considered and discussed the underlying medical evidence and stated his reasons for disagreeing with the determination that Plaintiff was disabled.  *Pelkey*, 433 F.3d at 579 (8th Cir. 2006).

Finally, to the extent the Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome."  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as Plaintiff's credible limitations; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

**D. VE Testimony**

Finally, Plaintiff briefly argues that the vocational expert's ("VE") testimony did not provide substantial evidence to support the hearing decision because the ALJ failed to ask the VE whether there were jobs in the national economy for an individual with Plaintiff's RFC who also needed to use a cane to ambulate (Doc. 18 at 9).  However, as previously addressed, the Court finds the ALJ's RFC determination to be consistent with the relevant evidence of record.  Accordingly, as the ALJ appropriately included the restrictions as indicated in his RFC determination in the hypothetical question to the vocational expert, the Court finds that the hypothetical which the ALJ submitted to the vocational expert was proper, the ALJ properly

relied on the vocational expert's testimony that there were jobs existing in significant numbers which Plaintiff could perform, and Plaintiff's arguments to the contrary are without merit (*See* Tr. 40, 68-74). *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ.").

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 17th day of September, 2018.

　　/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE